The People *v.* McMahon.

SUPREME COURT.    Albany General Term, December, 1855
*Parker, Harris* and *Watson,* Justices.

THE PEOPLE *vs.* ARTHUR MCMAHON.

Where a juror has been challenged *for favor,* and evidence of circumstances in support of the challenge has been received and submitted to the triers, without objection, it belongs to the triers and not to the court to decide whether the juror stands indifferent between the parties; and in such case the court, in charging the triers, should not instruct them how they ought to find on that point.  *Per* WRIGHT, J. at the Oyer and Terminer.

Where incompetent evidence has been received without objection, under a misapprehension on both sides, as to the facts on which its admissibility depended, a motion to strike out such evidence may be made at any subsequent stage of the trial, when facts shall have been proved which render it incompetent.

On the trial of a party for the murder of his wife, where it appeared that the prisoner was examined as a witness before the coroner's inquest and that he had been previously arrested for the murder, by a constable, without warrant and was under arrest at the time of his examination as a witness, though the fact of his arrest was not known to the coroner, but was a separate and independent proceeding, it was held competent to prove what the prisoner testified to before the coroner's jury.

Evidence given under such circumstances will be deemed voluntary because the witness has the right to refuse to answer any question tending to criminate himself.

This was a writ of error to the Rensselaer Oyer and Terminer. The prisoner was charged with the murder of Elizabeth McMahon, his wife. A plea of not guilty having been interposed to the indictment, the cause came on to trial on the 19th day of February 1855, before Mr. Justice Wright and the justices of the Sessions.

After Thomas Harthorn and Nairn Burgess had been called and sworn as jurors, Sylvester was drawn as a juror and was challenged by the counsel for the prosecution for favor. The said Harthorn and Burgess were then sworn as triers. At the request of the counsel for the prosecution said Cummings was then sworn and examined as to his fitness and qualification as a juror and testified as follows: "I live in North First street near Jay street in the city of Troy, about twenty feet from where the prisoner lived at the time of the death of his wife. I was home from my store about 10 o'clock of the evening of her death, and was not home after 6 o'clock of that evening until that hour. I had known the prisoner for about two years prior to that time. He was an occasional customer of mine. I was not present at the coroner's inquest. I was in prisoner's house the next day but one after the disappearance of his wife, and was a witness before the grand jury in this matter, and am subpœned here as a witness, but can not say in whose behalf. I have conversed about this matter, but have expressed no opinion as to the guilt or innocence of the prisoner. I have no tendency to one belief upon the subject more than the other. I have formed no opinion upon the subject. I am an Irishman by birth, and judge from prisoner's conversation that he is an Irishman. I can not say and have no belief as to the religious faith of the prisoner. I never saw him at the church where I worship. I can not remember the day of the week when this woman was last seen. I was sworn before the grand jury in this matter and testified. I have no bias in favor or against the prisoner in this matter."

The counsel for the prisoner then and there insisted before the said triers, and requested the court to charge them that the evidence showed that said Cummings was a legal and competent juror in the case; but the court refused so to charge, and the said triers found and decided upon the evidence aforesaid that the said Cummings was not indifferent between the parties and he was rejected, to which refusal, finding and rejection, the counsel for the prisoner duly and severally excepted.

It appeared on the trial that the prisoner, if guilty, must

The People *v.* McMahon.

have committed the offence on the 8th of September, 1854, between nine and ten o'clock in the evening. On the 9th of September, 1854, a coroner's inquest was held, upon which the prisoner was sworn as a witness. The testimony given by the prisoner before the coroner's inquest was proved on the trial, without objection, by the evidence of Doct. *Reed B. Bontecou,* the coroner. At the time this evidence was received it did not appear that the prisoner had been arrested at the time he was examined before the coroner's inquest. At a late stage of the trial *Charles R. Squires,* a witness called by the prosecution, testified, that he was, and had been, for several years, a constable; and that on the 9th of September, 1854, before the coroner's inquest was held, he arrested the prisoner without warrant, on suspicion that he was guilty of the supposed murder. That the prisoner continued under such arrest till after he had been examined before the coroner's inquest, when Squires took him to the office of Justice Brintnall and that while Brintnall was making out a warrant the coroner sent for the prisoner and made out a warrant on which he was taken to jail.

The prisoner testified before the coroner's jury that he was at home at nine o'clock on the evening of the 8th of September. This was important to meet a defence set up that the prisoner was absent from seven till ten o'clock.

The jury found the prisoner guilty and he was sentenced to be executed on the 27th day of April, 1855.

Annexed to the bill of exceptions were affidavits on which the prisoner's counsel asked for a new trial on the ground of newly discovered evidence.

*W. A. Beach,* for the prisoner.

I. The court erred in holding the testimony given by the prisoner before the coroner, competent evidence against him.

1. Although the evidence was taken without objection, the question as to its admissibility was properly before the court. It was admitted under the misapprehension *upon both sides* that

that there had been no arrest at the time. Doct. Bontecou, the coroner, had testified that the prisoner was arrested after the verdict on the inquest. The question upon the evidence was raised and considered by consent, without regard to its timeliness. The people can not therefore here object to its consideration.

2. The arrest of the prisoner by Squires was regular and lawful. A felony had been actually committed and reasonable grounds of suspicion existed against the prisoner. (3 *Wend.* 350; *Barbour's Cr. Law*, 543.)

3. The testimony of the prisoner while under such arrest was inadmissible against him. He was under the duress of the law. He testified under the compulsion of a legal proceeding. (*The People* v. *Hendrickson*, 9 *How. Pr. R.* 155; 8 *ib.* 402.)

(A) The prisoner stood before the coroner as an arraigned criminal. He was accused of the crime under examination, before an officer competent to investigate and commit. His examination should have been without oath and with information that he was at liberty to refuse to answer any question put to him. (2 *R. S.* 708.)

(B) Should it be thought that the provisions last cited are technically inapplicable to proceedings before a coroner, the latter are, nevertheless, obviously within their spirit. It is the charity of the law in all cases of charge and arrest, to protect the accused from all persuasion, or obligation to criminate himself.

(C) The exclusion of this character of testimony is not placed entirely upon the notion of self-crimination. It is a concession to the infirmity of the mind when overcome by heavy calamity and confused by the conflicting emotions, incident to a criminal accusation. (2 *Greenleaf on Ev.* § 214.)

(D) The prisoner was undoubtedly convicted, upon the declaration in his evidence before the coroner, that he was at his house, at nine o'clock of the evening of the murder. It was conceded on the trial, that the crime was committed (if at all at the house of the prisoner,) between 9 and 10 o'clock at

The People *v.* McMahon.

night. The prisoner had proven an *alibi* by·two unassailed witnesses. He could have been convicted therefore only upon his confession that he was at the scene of the crime, at the time of its commission.

. II. The prisoner is entitled to a new trial upon the ground of newly discovered evidence.

*M. I. Townsend,* for the people.

I. There was no error in the proceedings, or the finding of the triers, on the challenge to Sylvester Cummings as a juror. The evidence to sustain the challenge was submitted to the triers without objection. It consisted of the facts: 1. That the plaintiff in error and the juror were neighbors and friends. 2. The former was a customer of the latter. 3. The juror had been a witness before the grand jury, and was in attendance upon subpœna. He was a witness to many of the circumstances of which the case was made up.

The submission of the evidence to the triers was not objected to. The exceptions were to the refusal of the court to charge the triers as requested and the finding by them. And though formally two-fold were substantially the same: *First,* that the court refused to charge that they should find that the said Cummings was a legal and competent juror, and *second,* that the triers did not so find.

1. It was neither the duty nor the right of the court to so charge. (*The People* v. *Bodine,* 1 *Denio,* 308; *Same* v. *Honeyman,* 3 *id.* 124; *Same* v. *Freeman,* 4 *id.* 31.)

In the last case cited the court charged substantially as requested in this case. It was held erroneous and on that ground a new trial was granted. It was put upon the ground that the province of the court ended in determining what evidence was admissible, and that its strength and influence were for the triers alone to determine.

2. The finding of triers is conclusive and is not even subject to review. Where there is evidence submitted to triers and they are properly instructed, there is no appeal from their decision.

See authorities above cited. In *Com.* v. *Jolliffe*, (7 *Watts* 585,) it was held to be principal cause of challenge on the part of the commonwealth, that the juror had been subpœnaed as a witness by the prisoner.

It is a good ground of challenge to a person summoned to serve as a grand juror, that he is a witness on the part of the prosecution. (2 *R. S.* 724, § 27; *Whart. Amer. Cr. Law*, 961, 971; *4th Wend.* 229-19, *Johns. Rep.* 115, 119.)

II. There was no error in denying the motion to strike out the testimony of the prisoner given before the coroner's jury. The question presented by this exception, was decided in the Hendrickson case. The motion to strike out was founded not on the ground, that when the evidence was given he had been arrested, not on the ground that the statement was made under oath, but on the ground of the concurrent effect of the two. Now if it appears that either of those acts formed no material element of the legal proposition the whole objection fails.

1. That the prisoner had been arrested when the statement was made, did not effect the admissibility of his statements.

This was not put upon the ground that all his admissions made after this arrest were inadmissible.

2. Whether he was, or was not under oath when the statements were made, was not material as to the question of admissibility. That was understood when the statements were read in evidence and was not made ground of objection.

3. The concurrence of the arrest and the oath were not material. It is only when a prisoner is brought before a magistrate upon a charge of crime, and examined as a party to the proceedings and not as a witness, that the oath or the arrest becomes material; statements there made are *judicial* confessions and must be conducted according to the statutory requirements or they are not admissible in evidence against the party making them.

In this case he was examined as a witness, and of course his examination was conducted as in ordinary cases of witnesses, and he had the power of making every explanation which he chose to make as well as to avail himself of the

privilege of not answering if he deemed that his answer might criminate himself.

4. There was nothing in the circumstances surrounding him to take his statements out of the general rule that what a party has said relevant to the accusation upon which he is being tried is admissible in evidence against him. There were no inducements by means of threats or promises. His testimony was voluntarily given and seems to have been intended to avert suspicion from himself. *The People* v. *Hendrickson, 8th Howard Pr. Rep.* 405-7; 9 *ib.* 163-4; 1 *Parker's Cr. Rep.* 396, *&c.; People* v. *Knapp,* 10 *Pick. R.; People* v. *Whipple,* 9 *Cowen,* 707; 2 *R. S.* 708.)

The remaining points related to the alleged newly discovered evidence.

*By the Court,* PARKER, P. J.—It was proved at the trial that the prisoner was examined as a witness before the coroner's inquest, held on the day after the alleged murder. The testimony that he gave on that occasion was proved without objection. At a later stage of the trial, it was shown that, previous to the sitting of the inquest and on the same day, the prisoner had been arrested by one Squires a constable, without warrant, and was under arrest at the time of his examination. The prisoner's counsel then moved to strike out the evidence given in his testimony before the inquest, which the court refused to do.

It was not too late to strike out the evidence, if it was incompetent. It was received without objection, under the supposition on both sides, that the prisoner was not under arrest at the time of his examination as a witness. It was in time to make the objection, when the fact appeared on which that objection was based. The question must therefore be decided as if the objection had been made to the admissibility of the evidence before it was received.

This subject has been so recently and so fully examined in the case of *The People* v. *Hendrickson* ( 1 *Park. Cr. R.* 416,) that nothing new can be gleaned from a further review of the authorities. Upon principle, there can be no good reason

for the exclusion of this evidence. It is only upon a *judicial* examination, where the prisoner is brought before a magistrate charged with crime, that the accused is to be informed by the magistrate that he is at liberty to refuse to answer any question that may be put to him. (2 *R. S.* 708, § 15.) He is to be examined, but not on oath; and his answers may subsequently be used as evidence against him. That is the examination of a party and not of a witness.

In the examination of a witness, a different rule prevails. In that case the witness is to answer, unless he objects that his answer will tend to criminate him. If he makes that objection, he will not be compelled to answer. But if he does answer, his testimony may be given in evidence, afterwards, against him.

There is no hardship in this rule, nor is there any necessity for making any exceptions to it. It places all witnesses upon the same footing. The protection is the same, whether the witness be examined in a civil or a criminal suit, or on a general enquiry, before a grand jury or a coroner's inquest. In all these cases, a suspected person is liable to be called and examined, though he can not be, where he is a party to the proceeding.

This case differs a little from *Hendrickson's* case, but not in principle. There the witness was said to have been under suspicion at the time of his examination before the coroner; here he was under arrest. But he was not under an arrest made by order of the coroner, nor was he before the coroner as a prisoner. The coroner had no instrumentality in causing his arrest, nor had he even any knowledge on the subject. The constable, Squiers, without warrant, but supposing there were reasonable grounds for suspicion, had arrested the prisoner. After such arrest and before he was brought to Brintnall, the justice of the peace, before whom Squires was proceeding to take him, the inquest was held before the coroner, as a separate proceeding, and at that inquest, the prisoner, being present, was called and examined as a witness.

Under such circumstances, McMahon was not before the

coroner, as a prisoner, but as a witness. It does not appear that any person knew of his arrest except Squires. In regard to the coroner's proceeding, he stood, in no respect, in the relation of one arrested or even accused. He was there only in the capacity of a witness and it is as such, and not as a party, that his legal rights are to be determined.

It will not be claimed that it was improper to examine him on oath. The fact that he had been arrested, in a different proceeding, and by an officer in no way connected with the inquest, could not certainly disqualify him from testifying at the inquest. He was a competent witness. He was bound to know his legal rights. Like every other witness, he might refuse to testify; but if he did answer, he was bound to tell the truth at his peril. He was bound by his answers, and responsible for their truth. It will not be controverted, but it was proper to take his testimony into consideration in making up the inquest and that, for that purpose, it would be deemed voluntary. Upon what principle can it be deemed involuntary, when it is sought to be referred to as an admission, available in some other proceeding? It can not surely be voluntary for one use and involuntary for another.

It is said that being under arrest at the time of his examination, " his mind was overcome by a heavy calamity and confused by the conflicting emotions incident to a criminal accusation." Such a state of his mind might well be produced without an arrest. It would more naturally be the result of the criminal act itself, than of an arrest for the act. A troubled conscience would produce just such emotions. And with the more hardened, and even with the innocent, such feelings might arise from the distrust exhibited by those around him, without any overt act towards making an arrest. No practicable rule could be adopted which would exclude evidence on the ground that the mind of the witness was " confused by conflicting emotions." The only available way is to receive the evidence and judge of it by the character it exhibits. This puts all competent witnesses upon the same footing and applies to them the same rules of evidence.

Suppose, while McMahon was under arrest and on his way to the magistrate, he had been called as a witness in a civil suit against a third person, for damages, in which it might be material to enquire into the cause of the death of the deceased. Is there any doubt but he would have been a competent witness, and obliged to answer all relevant questions asked him, unless he should claim his privilege not to criminate himself? No one I think will question it. His answers then would have been evidence in the civil suit, and would be deemed voluntary. If, in such case, he does not claim his privilege, he will be considered as willing to criminate himself, and there can be no doubt what he testifies to may be used for that purpose afterwards. It is because it may be so used, and to avoid such a consequence that he may refuse to answer. If such use could not be made of it, there would, in no case, be any necessity for making a claim of privilege.

If it would have been competent to prove what was stated under oath by McMahon in a civil suit, it was equally competent to prove his testimony before the coroner. If he was under arrest and was examined to the same subject matter, it could make no difference to him whether he was examined in a civil suit, or on a coroner's inquest or grand jury, or even on a trial of another person for crime. If the arrest was in no way connected with the tribunal or proceeding in which he was sworn, he could not be considered as acting or speaking under any more compulsion than is always supposed to be imposed upon a witness, viz., to testify and to tell the truth; and even that compulsion ceases, in all cases, when a question is asked, the answer to which may tend to criminate the witness. If a witness answers in any case as to such a matter, it will be because he voluntarily elects to do so.

I think the evidence excepted to was properly received.

Relief is also asked on the ground of newly discovered evidence and affidavits are laid before us, with a view of showing that important evidence has been discovered since the trial. No such ground is available on writ of error. We can only review the legal questions growing out of the trial and reverse for any

error that may be found to have been there committed. For any mistake of fact, or for any relief on the ground of the discovery of new evidence, the party can only look to the tribunal in which the issue was tried. The power of the Oyer and Terminer to grant a new trial on the merits has been ably, and I think conclusively, vindicated, by one of my learned associates in *The People* v. *Morrison* (1 *Park. Cr. R.* 625). At all events, no such power is vested in the appeelate tribunal.

The judgment of the Oyer and Terminer must be affirmed and the sentence pronounced is hereby directed to be executed. (2 *R. S.* 741 § 24.)

Judgment affirmed.

